**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MELVIN STERNBERG; STERNBERG & SINGER, LTD.,<br>*Appellants,*<br><br>v.<br><br>LOGAN T. JOHNSTON, III,<br>*Appellee.* | Nos. 07-16870 & 08-15721<br><br>D.C. No.<br>2:06-CV-02115-ROS<br><br>ORDER AMENDING OPINION AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
March 6, 2009—Tucson, Arizona

Filed October 1, 2009
Amended October 22, 2009
Second Amendment February 8, 2010

Before: Michael Daly Hawkins, Marsha S. Berzon, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

## COUNSEL

Michael W. Carmel, Phoenix, Arizona, for the appellants.

Ronald J. Ellett, Phoenix, Arizona, for the appellee.

## ORDER

The opinion in this case is further amended by adding a new footnote 3 (and renumbering succeeding footnotes) on page 14188 of the amended slip opinion filed on October 22, 2009 (also found at 582 F.3d 1114, 1122), at the end of the first sentence of the fourth paragraph under the heading "B. Attorney Fees," which reads:

> The relevant statute, 11 U.S.C. § 362(k)(1), states that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

The new footnote 3 added at the end of that sentence is:

> The attorneys fee award against Sternberg was based on the authority of this statute. The bankruptcy court did not find Sternberg or anyone else to be in civil contempt for violating the automatic stay, nor did it impose any sanctions under its inherent civil contempt authority. *See In re Dyer*, 322 F.2d 1178, 1189

> (9th Cir. 2003). As this opinion does not consider the civil contempt authority of the court, it does not limit the availability of contempt sanctions, including attorney fees, for violation of the automatic stay, where otherwise appropriate.

With this amendment, the panel has voted to deny the petition for panel rehearing. Judges Berzon and Clifton vote to deny the petition for rehearing en banc and Judge Hawkins so recommends. The full court has been advised of the petition for rehearing and rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. *See* Fed. R. App. P. 35. The petition for panel rehearing and the petition for rehearing en banc are denied. No subsequent petitions for rehearing, rehearing en banc, or rehearing before the full court may be filed.

---

## OPINION

CLIFTON, Circuit Judge:

The filing of a bankruptcy petition immediately gives rise to an automatic stay. The stay applies to block or freeze most judicial actions against a debtor. It also permits a debtor to recoup any "actual damages," including attorney fees, that result from a willful stay violation. *See* 11 U.S.C. § 362. This case presents questions both as to when a willful stay violation occurs and as to what attorney fees may be recovered as "actual damages."

We affirm the holding of the district court that appellant Melvin Sternberg willfully violated the automatic stay that arose once appellee Logan Johnston filed for bankruptcy. Our cases establish that Sternberg had an affirmative duty to comply with the stay. This duty included ensuring that his actions did not prolong a violation of the stay that resulted from a

state court motion seeking relief against Johnston that Sternberg filed prior to the bankruptcy. In this case, Sternberg willfully violated the automatic stay by defending an overbroad state court order in its entirety.

We also hold, however, that Johnston can recover as actual damages only those attorney fees related to enforcing the automatic stay and remedying the stay violation, not the fees incurred in prosecuting the bankruptcy adversary proceeding in which he pursued his claim for those damages. We thus vacate the amount of the award entered by the district court and remand for determination of the appropriate amount.

## I.    Background

Logan Johnston and Paula Parker were divorced in 1996. As part of the property settlement, Johnston was ordered to pay spousal maintenance.

In January 2001, Parker, through her attorney, Melvin Sternberg, asked the state court to hold Johnston in contempt for non-payment of spousal support. Among other things, the request asked the court to "award Judgment . . . for all sums of spousal maintenance[;] . . . enter an Order that [Johnston] be incarcerated; that his professional law license be suspended; and his drivers' license be revoked . . . until he . . . immediately pay[s] *ALL* sums[;]" and place a lien "upon any vehicle or other property owned."

On May 14 of that year, Johnston filed a Chapter 11 bankruptcy petition. His bankruptcy counsel did not file notice of this petition in the state court proceeding until May 17, however.

On that same day, May 17, the state court conducted what appears to have been a previously scheduled evidentiary hearing on Parker's contempt request. Johnston, who is an attorney, represented himself. Approximately 15 minutes into the

hearing, he advised the court for the first time of his bank-
ruptcy proceedings, explaining that the proceedings would
result in a plan to pay his debts, including the spousal support,
and that his bankruptcy counsel had informed him that the fil-
ing of the bankruptcy petition stayed anything regarding the
property settlement, attorney fees, and sanctions. He apolo-
gized for "not knowing exactly what's going on" and said, "I
guess, I object in the abstract to anything that would contra-
vene the bankruptcy laws," while agreeing that the state court
could establish the amount of his arrears.

Sternberg, for his part, explained that he did not know if the
bankruptcy filing stayed the proceedings but stated that he did
not think moving forward on the arrears, attorney fees, and
contempt determination would violate the stay. The court
decided to proceed on the issue of whether Johnston was in
contempt. It would "take up the issue of sanctions at a later
time when counsel ha[d] researched whether or not [the] court
has jurisdiction to issue sanctions when a bankruptcy proceed-
ing is pending."

On July 13, the state court filed a minute order holding
Johnston in violation of the divorce decree. The court found
Johnston in contempt and granted judgment for Parker in the
amount of $87,525.60, including interest. In addition, it
ordered Johnston to "pay the judgment by August 1, 2001,"
or be jailed "until the full amount . . . is paid."

The parties were surprised by the order. Specifically, the
bankruptcy court found that Sternberg and Parker "had
expected further proceedings before the Judge would order
[Johnston] to pay a sum certain or face any consequences."

Johnston quickly sought to obtain relief from the order. He
filed a motion for stay in the state court, but the hearing date
on that motion was set for the day after the August 1 deadline
by which he was to pay the arrears or go to jail. Additionally,
he wrote a letter to Sternberg informing him that he was in

violation of the automatic stay and asking Sternberg to "take appropriate remedial measures to cure [his] violation." Sternberg did not take such action.

Johnston then filed a petition in the Arizona court of appeals, requesting the appellate court to stay and vacate the order. Representing Parker, Sternberg's law firm filed a responsive brief, which was signed by another lawyer on Sternberg's behalf. The brief took the position that the state court had proceeded within two exemptions to the automatic stay. Those exemptions allow for "the establishment or modification of an order for domestic support obligations" and "the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(A)-(B). The brief concluded by arguing that the judge "properly exercised her broad discretion and legal authority to continue with the evidentiary hearing[,] . . . [to] hold Petitioner in contempt[,]" and to "deny [his] motion for relief."

In the meantime, Johnston also sought relief from the bankruptcy court, where he filed another emergency motion to set aside the minute order, and also an adversary proceeding charging Parker and Sternberg with willfully violating the automatic stay. On July 31, the bankruptcy court conducted a hearing on the emergency motion. It concluded that the automatic stay had been violated and vacated the state court's minute order. In a later order, the bankruptcy court summarized its decision as follows:

> If the State Court had qualified its Order to reflect only the amount of the arrearages, or if the State Court had been advised of what constituted non-estate property, so that the Minute Entry Order could be tailored only to the collection of the arrearages from such non-estate property, then the State Court arguably would have been acting within an exception to the automatic stay. However, the Minute Entry dictated that the Debtor immediately satisfy a

> large Judgment or face incarceration; all without the
> State Court focusing on the non-estate property . . .
> or requesting the Bankruptcy Court's prior determi-
> nation of whether the automatic stay applied . . . .

*Johnston v. Parker (In re Johnston)*, 308 B.R. 469, 474
(Bankr. D. Ariz. 2003) ("*Johnston I*").

Some time later, the adversary proceeding went to trial.
After Johnston presented his case, Parker and Sternberg
moved for a directed verdict. *Id.* at 471. The bankruptcy court
granted the motion. *Id.* at 484-85. While the court reaffirmed
its earlier conclusion that the state court order had violated the
automatic stay, it wrote that it "[did] not see any separate vio-
lation of the stay by Defendants Parker and Sternberg." *Id.* at
478. Furthermore, the court noted that while *Eskanos &
Alder, P.C. v. Leetien (Eskanos)*, 309 F.3d 1210 (9th Cir.
2002), a precedent imposing an affirmative duty on parties to
dismiss or stay actions that violate the stay, *id.* at 1214-15,
could be interpreted as "chang[ing] this result," the court
believed that case "should be limited to postpetition collection
actions commenced or maintained by a creditor or its law
firm" and not a claim for "support arrearages." *Johnston I*,
308 B.R. at 483-84.

On appeal, the district court reversed, holding *Eskanos* to
be controlling. *Johnston v. Parker (In re Johnston)*, 321 B.R.
262, 282 (D. Ariz. 2005) ("*Johnston II*"). More specifically,
the court held, under *Eskanos*, that Sternberg and Parker "had
an obligation to remedy the violation" of the stay created by
the state court order and found no grounds by which to distin-
guish *Eskanos*. *Id.* at 284-86. It remanded the case to the
bankruptcy court for further proceedings. *Id.* at 287.

The remanded issues were then tried to the bankruptcy
court. Before the court issued a ruling, Johnston settled with
Parker, leaving only Sternberg as a defendant.

The bankruptcy court filed its decision in March 2006. The court explained that the district court's opinion had narrowed the issues because it had concluded that "Sternberg willfully violated the automatic stay." After hearing Johnston's testimony and reviewing his monthly interim reports, the court concluded that Johnston had been injured in the amount of $2,883.20 because the stay violation had hindered his ability to work. The court also found Johnston's testimony of emotional distress to be credible and awarded further damages in the amount of $20,000. Lastly, the court conducted a review of Johnston's attorney fees and costs, and awarded $69,986, which included fees for prosecuting the adversary proceeding. The total judgment amounted to $92,869.20 plus post-judgment interest at a rate of 5.10% per annum.

An appeal followed, and the district court affirmed. Sternberg then appealed to our court.

## II.    Discussion

This opinion addresses two issues: whether Sternberg violated the automatic stay and whether the bankruptcy court erred in its calculation of Johnston's damages.[1] Each issue is addressed in turn.[2]

---

[1] While Sternberg also argues that the bankruptcy court's emotional distress award was an abuse of discretion, this issue does not merit a lengthy discussion. Each of Sternberg's arguments is foreclosed by *Dawson v. Washington Mutual Bank, F.A.* (*In re Dawson*), 390 F.3d 1139 (9th Cir. 2004). First, as *In re Dawson* clearly states, "even if the violation of the automatic stay was not egregious," Johnston could recover emotional distress damages that arose from a stay violation. *Id.* at 1149-50. Second, Johnston could establish emotional distress damages without corroborating evidence if the circumstances make it obvious "that a reasonable person would [have] suffer[ed] significant emotional harm," which the bankruptcy court found was the case here. *Id.* at 1149-51. Lastly, there is no basis on which to disturb the bankruptcy court's finding that Johnston did not waive his emotional distress claim or to find that his claim was somehow precluded by the bankruptcy court's evidentiary rulings.

[2] Johnston argues that Sternberg has waived all of his arguments but one by providing an inadequate "appellate record." Sternberg supplemented his excerpts of record, however, making it sufficient to resolve this dispute. *See Everett v. Perez* (*In re Perez*), 30 F.3d 1209, 1217-18 (9th Cir. 1994).

*A.    The Automatic Stay*

Whether the automatic stay has been violated is an issue we review *de novo. Eskanos*, 309 F.3d at 1213. "Whether a party has willfully violated the automatic stay is a question of fact reviewed for clear error." *Id.*

[1] When a debtor files for bankruptcy, he is immediately protected by an automatic stay under 11 U.S.C. § 362(a), which provides that a bankruptcy petition, among other things,

> operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ; the enforcement . . . of a judgment . . . ; any act to obtain possession of property of the estate . . . ; [and] any act to create, perfect, or enforce any lien . . . ."

It does not, however, prevent "the commencement or continuation of a civil action . . . for the establishment or modification of an order for domestic support obligations" or "the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(A)-(B). Nevertheless, "[t]he scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law." *Eskanos*, 309 F.3d at 1214; *see Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 552 (9th Cir. 1988) ("Congress clearly intended the automatic stay to be quite broad. Exemptions to the stay, on the other hand, should be read narrowly . . . .").

[2] We have held on several occasions that the automatic stay imposes on non-debtor parties an affirmative duty of compliance. In *State of California Employment Development Department v. Taxel (In re Del Mission Ltd.)*, for example, we held that a state's knowing retention of disputed taxes vio-

lated the automatic stay. 98 F.3d 1147, 1151-52 (9th Cir. 1996). We explained that "the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor." *Id.* at 1151. Similarly, in *Knupfer v. Lindblade (In re Dyer)*, we held that the post-bankruptcy petition recordation of a deed of trust by a creditor was a willful violation of the automatic stay because the creditor "had an affirmative duty to remedy his automatic stay violation . . . such as by attempting to undo the recordation process." 322 F.3d 1178, 1191-92 (9th Cir. 2003).

The district court in this case found the rationale of our decision in *Eskanos* controlling. In that case, a law firm had been hired by one of a debtor's unsecured creditors to pursue a collection action against the debtor. After filing the action, the firm learned of the debtor's bankruptcy but waited 23 days to dismiss the action. *Eskanos*, 309 F.3d. at 1212. The bankruptcy court found that this inaction violated the automatic stay, and the district court agreed. *Id.* at 1212-13. On appeal, we explained that the plain language of § 362(a)(1) unambiguously imposed an "affirmative duty" on the firm to discontinue the action once it gained knowledge of the bankruptcy. *Id.* at 1214-15. "Maintenance of an active collection action in state court does nothing if not carry forward or persist against a debtor. . . . [S]tate filings exist as more than placeholders—the risk of default judgment looms over the debtor throughout." *Id.* at 1214. Since the law firm allowed the collection action to persist even after learning of the debtor's bankruptcy, we affirmed. *Id.* at 1214-16.

[3] The above authorities establish that Sternberg had an "affirmative duty" to conform his conduct to the automatic stay once Johnston filed for bankruptcy. The district court found that Sternberg violated this duty because he "w[as] required to take affirmative action to stay or vacate the state court's . . . Order" and failed to do so. *Johnston II*, 321 B.R. at 286.

[4] We do not fault Sternberg for anything he did at the May 17 state court hearing, because the news of Johnston's bankruptcy filing came as a surprise to him. The state court's July 13 order also surprised him, and Sternberg cannot be held responsible for the order. Within a reasonable time after that, however, the law required Sternberg to take corrective action. He did not, and he affirmatively opposed Johnston's effort to obtain relief from the state appellate court.

As described above, shortly after the overbroad state court order was filed, Johnston brought a petition for special action requesting the state appellate court to stay and vacate the order. In response, Sternberg offered a complete defense of the order. The conclusion of the brief filed by Sternberg's law firm on behalf of Parker illustrates the breadth of this defense. The brief concludes by arguing that the state court judge "properly exercised her broad discretion and legal authority to continue with the evidentiary hearing[,] . . . hold [Johnston] in contempt[,]" and "deny [his] motion for relief." Sternberg's defense of the order was absolute. He did not try to parse the valid from the invalid, but instead defended the order in its entirety, including the command that Johnston pay the arrears or go to jail, and without limiting the source of payment to non-estate property.

[5] Sternberg argues that he was "compelled" to do this because the order was not completely invalid and Johnston had requested that it be vacated in its entirety. This misses the point. What Sternberg was compelled to do was comply with the automatic stay. *See, e.g., Eskanos*, 309 F.3d at 1212-14. The state court order was in violation of the stay because, as the courts below concluded, it ordered Johnston to pay arrears or go to jail without focusing on Johnston's non-estate property. *See Johnston II*, 321 B.R. at 275-80; *Johnston I*, 308 B.R. at 478, 480; *see also* 11 U.S.C. § 362. Sternberg recognized this but did not say anything to the appellate court because he did not think it was his duty "to practice law on

[Johnston's] behalf." That did not, however, authorize him to act in violation of the automatic stay.

[6] To comply with his "affirmative duty" under the automatic stay, Sternberg needed to do what he could to relieve the violation. He could not simply rely on the normal adversarial process. *See Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 615-16 (9th Cir. 1993) (holding that parties who attempted to exempt a debtor from their unlawful detainer action with a unilateral stipulation still violated the automatic stay because "the stipulation might not [have] accomplish[ed] its intended purpose" and thus the parties "could have, and should have, pursued the orthodox remedy: relief from the automatic stay"). At a minimum, he had an obligation to alert the state appellate court to the conflicts between the order and the automatic stay. As we have explained before, "[t]he automatic stay is intended to give the debtor a breathing spell from his creditors." *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 226 (9th Cir. 1989) (internal quotation marks omitted). The state court order intruded upon Johnston's "breathing spell." Sternberg did not act to try to fix that problem.

Sternberg also argues a variety of facts that implicitly challenge the willfulness of his violation. The thrust of his argument is that because Johnston never specifically requested that Sternberg seek to modify the order, and because Sternberg never sought to collect on the order, Sternberg did not willfully violate the stay. Sternberg also appears to argue that because he believed that he was always proceeding within the domestic support exemptions, he could not have committed a willful violation.

Johnston was not required to ask Sternberg to modify the order for Sternberg's violation to be willful. *See In re Del Mission Ltd.*, 98 F.3d at 1151-52 (concluding that the retention of taxes was a violation of the stay even though the debtor never requested their return). Likewise, Sternberg

needed neither to make some collection effort nor to know
that his actions were unlawful for his violation to be willful.
*See Eskanos*, 309 F.3d at 1214-15 (rejecting the law firm's
assertion that something more than maintaining an active col-
lection action was needed to violate the stay); *In re Goodman*,
991 F.2d at 618 ("Whether the [defendant] believes in good
faith that it had a right to the property is not relevant to
whether the act was 'willful' . . . ." (internal quotation marks
omitted)). All that is required is that Sternberg "knew of the
automatic stay, and [his] actions in violation of the stay were
intentional." *Eskanos*, 309 F.3d at 1215. Both of these ele-
ments were satisfied here.

At a minimum, Sternberg needed to alert the appellate court
to the obvious conflicts between the order and the stay. By not
doing so, he willfully violated the automatic stay.

## B.    Attorney Fees

Sternberg also argues that the bankruptcy court erred in cal-
culating Johnston's damages because it awarded attorney fees
not only for the work associated with remedying the stay vio-
lation but also for the subsequent adversary proceeding in
which Johnston sought to collect damages for the stay viola-
tion. We agree.

"A bankruptcy court's award of attorney fees is reviewed
for abuse of discretion or erroneous application of the law."
*Dawson v. Washington Mutual Bank, F.A.* (*In re Dawson*),
390 F.3d 1139, 1145 (9th Cir. 2004).

[7] Congress legislates against the backdrop of the "Ameri-
can Rule." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533
(1994). "Unlike Britain where counsel fees are regularly
awarded to the prevailing party, it is the general rule in this
country that unless Congress provides otherwise, parties are
to bear their own attorney's fees." *Id.* We interpret possible
fee-shifting statutes in light of their context and the goals

underlying the legislation of which they are a part. *See Fulfill-ment Services Inc. v. United Parcel Service, Inc.*, 528 F.3d 614, 623 (9th Cir. 2008).

[8] The relevant statute, 11 U.S.C. § 362(k)(1), states that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[3] Without a doubt, Congress intended § 362(k)(1) to permit recovery as damages of fees incurred to prevent viola-tion of the automatic stay. In permitting recovery of these fees as damages, § 362(k)(1) is consistent with the American Rule. There are several other situations in which fees can be part of damages; i.e., where the harm to be remedied includes expen-diture of fees. Examples include legal malpractice suits, *see, e.g., John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998) (holding that a successful plaintiff in a legal malpractice action may recover "initial fees a plain-tiff pays or agrees to pay an attorney for legal services that were negligently performed" and "corrective fees incurred by the plaintiff for work performed to correct the problem caused by the negligent lawyer" but *not* "litigation fees, which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer") (internal quotations omitted); bad faith actions against an insurer, *see Brandt v. Superior Court*, 37 Cal.3d 813 (Cal. 1985) ("When an insur-er's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it fol-lows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss — damages

---

[3]The attorneys fee award against Sternberg was based on the authority of this statute. The bankruptcy court did not find Sternberg or anyone else to be in civil contempt for violating the automatic stay, nor did it impose any sanctions under its inherent civil contempt authority. *See In re Dyer*, 322 F.2d 1178, 1189 (9th Cir. 2003). As this opinion does not consider the civil contempt authority of the court, it does not limit the availability of contempt sanctions, including attorney fees, for violation of the automatic stay, where otherwise appropriate.

— proximately caused by the tort. These fees must be distinguished from recovery of attorney's fees qua attorney's fees, such as those attributable to the bringing of the bad faith action itself.") (internal citations omitted); and abuse of process suits, *see, e.g., Technical Computer Servs., Inc. v. Buckley,* 844 P.2d 1249 (Colo. Ct. App. 1992) (recognizing the "general rule" that "a claimant in a malicious prosecution or abuse of process action can recover attorney fees incurred in defending against the prior wrongful litigation" but "cannot recover attorney fees incurred in bringing the malicious prosecution or abuse of process action itself," and applying the same rule where "the abuse of process claim is brought as a counterclaim to wrongful litigation rather than as a later separate action").

What is less clear is whether Congress intended to deviate from the American Rule by allowing recovery as damages of the fees incurred in the bankruptcy court action for damages resulting from violation of the automatic stay.[4]

We have previously stated that § 362(k)(1) "mandates the award of actual damages to an individual injured by any willful violation of a stay." *In re Del Mission Ltd.,* 98 F.3d at 1152 (internal quotation marks and alterations omitted). But "actual damages" is an ambiguous phrase. *See In re Dawson,* 390 F.3d at 1146 (noting that "the text of the statute" does not

---

[4]We have affirmed awards under § 362(k)(1) that appear to have contained attorney fees incurred in prosecuting a § 362(k)(1) damages action. *See In re Dawson,* 390 F.3d at 1152-53; *In re Bloom,* 875 F.2d at 227; *see also Havelock v. Taxel (In re Pace),* 67 F.3d 187, 192 (9th Cir. 1995) (describing *In re Bloom* as "approving an award of fees that included the cost of prosecuting the action for damages stemming from violation of the automatic stay"). In these cases our court was not confronted with an argument that § 362(k)(1) does not permit such fees. "In [none of the] case[s], then, was the issue we face today 'presented for review' and decided. Accordingly, we are free to decide the issue without referring it to the court en banc." *United States v. Macias-Valencia,* 510 F.3d 1012, 1015 (9th Cir. 2007) (internal citation omitted).

define "actual damages"). The Bankruptcy Appellate Panel ("BAP"), for example, seems to view "actual damages" as requiring an award that returns a debtor to the position he was in before the stay violation occurred. *See Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 878 (B.A.P. 9th Cir. 1998) (rejecting an alternative reading of the statute under which, according to the BAP, "the injured party is not made whole"). Thus, in *In re Pace*, the BAP stated:

> An award of attorneys' fees is appropriate where a debtor must resort to the Court to enforce his or her rights in consequence of a violation of the automatic stay. Accordingly, it is well established that the attorneys' fees and costs incurred in prosecuting an adversary proceeding seeking damages arising from a violation of the automatic stay is recoverable . . . .

*Havelock v. Taxel (In re Pace)*, 159 B.R. 890, 900 (B.A.P. 9th Cir. 1993) (internal quotation marks and citation omitted), *vacated in part on other grounds by* 67 F.3d 187 (9th Cir. 1995).

[9] In contrast, we conclude that the plain meaning of "actual damages" points to a different result. The dictionary defines "actual damages" as "[a]n amount awarded . . . to compensate for a proven injury or loss; damages that repay actual losses." BLACK'S LAW DICTIONARY 416 (8th ed. 2004). Following this definition, the proven injury is the injury resulting from the stay violation itself. Once the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for "actual damages" under § 362(k)(1). Under the American Rule, a plaintiff cannot ordinarily recover attorney fees spent to correct a legal injury as part of his damages, even though it could be said he is not made whole as a result. *See, e.g.*, Restatement (Second) of Torts § 914(1) (1979) ("The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation."). The same is true here. The con-

text and goals of the automatic stay support this narrower understanding, and it is the one we adopt.

We have explained the purposes of the automatic stay as twofold. These two purposes are enabling the debtor to try to reorganize during a break from collection efforts and protecting creditors by preventing one creditor from pursuing its own remedies to the detriment of its co-creditors. *See In re Dawson*, 390 F.3d at 1147 (citing *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993)). *In re Dawson* took this analysis a step further. There, we reasoned that the twofold purpose showed that "the stay . . . is meant to achieve financial *and* non-financial goals." *Id.* We explained that "one aim of the automatic stay is financial[, as] the stay gives the debtor time to put finances back in order, . . . [b]ut another purpose is to create a breathing spell" for a debtor from his creditors. *Id.* (internal quotation marks omitted).

Permitting a debtor to collect attorney fees incurred in prosecuting a damages action would further neither the financial nor the non-financial goals of the automatic stay. With regard to the financial goals, we have explained that "the stay gives the debtor time to put finances back in order, offers the debtor an opportunity to reorganize so that creditors can be satisfied to the greatest extent possible, and prevents creditors from racing to devour the debtor's estate . . . ." *Id.* The stay, then, is meant to help the debtor deal with his bankruptcy for the benefit of himself and his creditors alike. We have never said the stay should aid the debtor in pursuing his creditors, even those creditors who violate the stay. The stay is a shield, not a sword. *See, e.g., Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) ("It is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions . . . in nonbankruptcy fora against the debtor . . . .").

[10] Allowing attorney fees for a damages action also would not promote the non-financial goals of the automatic

stay. More litigation is hardly consistent with the concept of a "breathing spell" for the debtor. In fact, part of the rationale of the "affirmative duty" we have imposed on non-debtors to dismiss collection actions against debtors is that "[c]ounsel must be engaged to defend against a default judgment [and] . . . state collection actions are not to be used as leverage in negotiating . . . in bankruptcy." *Eskanos*, 309 F.3d at 1214. There is no reason to think that we should approve these possibilities when they could work to the debtor's advantage. Either way, he is engaged in litigation attenuated from the actual bankruptcy, something we do not think Congress intended to promote by allowing him to collect "actual damages" for a violation of the automatic stay. *See Fogerty*, 510 U.S. at 534 ("Such a bold departure from traditional practice would have surely drawn more explicit statutory language . . . ."); *Fulfillment Services*, 528 F.3d at 624 ("While imposition of the British Rule would be far from [an] 'absurd result' . . . [,] [h]ad Congress aspired to such a radical departure, it no doubt would have so indicated with explicit language to that effect."). We conclude, therefore, that a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available under the American Rule.

[11] We recognize that the Fifth Circuit appears to have held to the contrary: "The lower courts in our Circuit have concluded that it is proper to award attorney's fees that were incurred prosecuting a section 362(k) claim[,]" and "[w]e adopt the same reading of section 362(k) and therefore agree." *Young v. Repine* (*In re Repine*), 536 F.3d 512, 522 (5th Cir. 2008). We do not create a circuit split lightly. But the above-quoted language is all the court said on the issue. Without more, we are hard-pressed to find this decision persuasive.

[12] We remand to the district court with instructions to remand to the bankruptcy court to determine which fees are properly allocable to efforts to enforce the automatic stay and prevent enforcement of the state court order that violated the

2164      STERNBERG v. JOHNSTON

stay. All fees related to proving Johnston's damages are disallowed per the American Rule.

### III.  Conclusion

[13] We affirm that portion of the district court's judgment that holds that Sternberg violated the automatic stay and is liable for Johnston's actual damages. We also affirm the determinations that Johnston suffered actual damages of $2,883.20 for the interference with his work and an additional $20,000.00 for emotional distress. His actual damages also include the attorney fees incurred in seeking to enforce the automatic stay and to fix the problem caused by the overbroad state court order. Because Johnston's actual damages under § 362(k)(1) do not include fees incurred in prosecuting the adversary proceeding to obtain damages, we vacate the amount of the judgment and remand for further proceedings to determine the appropriate amount.

Each side to bear its own costs.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

## Michael Carmel

**From:**    ca9_ecfnoticing@ca9.uscourts.gov

**Sent:**    Monday, February 08, 2010 9:28 AM

**To:**      michael@mcarmellaw.com

**Subject:** 07-16870 Sternberg, et al v. Johnston "Order And Amended Opinion Filed"

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* **Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

### United States Court of Appeals for the Ninth Circuit

#### Notice of Docket Activity

The following transaction was entered on 02/08/2010 at 8:27:07 AM PST and filed on 02/08/2010

**Case Name:**    Sternberg, et al v. Johnston

**Case Number:**   07-16870

**Document(s):**   Document(s)

#### Docket Text:

Filed order and amended opinion (MICHAEL DALY HAWKINS, MARSHA S. BERZON and RICHARD R. CLIFTON). The opinion in this case is further amended by adding a new footnote 3 (and renumbering succeeding footnotes) on page 14188 of the amended slip opinion filed on October 22, 2009 (also found at 582 F.3d 1114, 1122), at the end of the first sentence of the fourth paragraph under the heading "B. Attorney Fees," which reads: (see order for full text). With this amendment, the panel has voted to deny the petition for panel rehearing. Judges Berzon and Clifton vote to deny the petition for rehearing en banc and Judge Hawkins so recommends. The full court has been advised of the petition for rehearing and rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. See Fed. R. App. P. 35. The petition for panel rehearing and the petition for rehearing en banc are denied. No subsequent petitions for rehearing, rehearing en banc, or rehearing before the full court may be filed. [7222725] [07-16870, 08-15721] (RP)

The following document(s) are associated with this transaction:
**Document Description:** Order and Amended Opinion
**Original Filename:** 07-16870.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1106763461 [Date=02/08/2010] [FileNumber=7222725-0]
[423e6953b2a3d6e14188fa785c3c0934000293eb845aaaf7ac7eb008ce9104fb0b4f67fa92bd6e6aa

#### Notice will be electronically mailed to:

Mr. Carmel, Michael Warren, Attorney
Ellett, Ronald J., Attorney
USDC, Phoenix

**Case participants listed below will not receive this electronic notice:**

Honorable Silver, Roslyn O., U.S. District Judge
District of Arizona (Phoenix)
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street
Phoenix, AZ 85003

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 7222725
**RELIEF(S) DOCKETED:**
  AFFIRMED IN PART
  REMANDED IN PART
  VACATED
  AFFIRMED IN PART
  REMANDED IN PART
  VACATED
  for rehearing by en banc only (all active, any interested senior judges)
  for rehearing by en banc only (all active, any interested senior judges)
**DOCKET PART(S) ADDED:** 6796205, 6557644, 6557648, 6557646, 6557644, 6557648, 6557646,
6599766, 6599767, 6642488, 6599766, 6599767

_____ NOD32 4628 (20091122) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com